UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEDMAN T. SMITH,

    Petitioner,

v.                                                 Case No: 5:18-cv-465-TPB-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

    Respondents.
_____/

**ORDER DENYING THE PETITION AND
DISMISSING CASE WITH PREJUDICE**

**I.    Status**

Petitioner, Stedman T. Smith, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondents filed a Response (Doc. 17).[1] The Court provided Petitioner with an opportunity to reply (Doc. 12), but he did not do so. This case is ripe for review.

**II.    Procedural History**

A jury convicted Petitioner of attempted robbery with a firearm and aggravated battery with a firearm (Resp. Ex. A at 71-73). The trial court adjudicated Petitioner as a habitual felony offender and sentenced him to a twenty-year term of incarceration with a ten-year minimum mandatory (*id.* at 79). On

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

direct appeal, Petitioner, with the benefit of counsel, filed an initial brief (Resp. Ex. C) pursuant to *Anders v. California*, 386 U.S. 738 (1967). Petitioner also filed a pro se initial brief (Resp. Exs. G, H). The Fifth District Court of Appeal per curiam affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. J-K).

Petitioner filed a pro se Florida Rule of Criminal Procedure 3.850 motion for postconviction relief (Resp. Ex. L at 60) raising four claims of ineffective assistance of trial counsel. The trial court conducted an evidentiary hearing on ground three of the Rule 3.850 motion (*id.* at 219-318), and later, it entered an order denying the motion in full (*id.* at 100-06). Petitioner appealed (Resp. Ex. M), arguing that the trial court erred in failing to grant an evidentiary hearing on grounds one, two, and four and that the trial court erred in denying ground three following the evidentiary hearing. The Fifth DCA per curiam affirmed the trial court's decision without a written opinion (Resp. Ex. O).

Petitioner then filed a pro se second or successive Rule 3.850 motion. (Resp. Ex. Q) raising one claim of ineffective assistance of counsel. The trial court dismissed the second or successive Rule 3.850 motion as procedurally barred (Resp. Ex. R). Petitioner appealed and the Fifth DCA per curiam affirmed the trial court's dismissal without a written opinion (Resp. Ex. T). Petitioner then filed the Petition (Doc. 1), raising five grounds for relief, all of which turn on claims of ineffective assistance of trial counsel.

### III. Governing Legal Principles

#### *A. Standard of Review Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"

3

or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in

4

his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process.").

A state prisoner's failure to properly exhaust available state remedies leads to a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman*,[2] 111 S. Ct. 2546; *Sykes*,[3] 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 131 S. Ct. 1120, 1127-1128, (2011); *Beard v. Kindler*, 130 S. Ct.

---

[2] *Coleman v. Thompson*, 501 U.S. 722 (1991).

[3] *Wainwright v. Sykes*, 433 U.S. 72 (1977).

> 612, 617-618 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 111 S. Ct. 2546.

*Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687.

Further, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

IV. Analysis

    *A. Ground One*

Petitioner contends that his trial counsel was ineffective for failing to object to the trial court's response to the jury's question during deliberations (Doc. 1 at 5-7). Petitioner raised this claim in his initial Rule 3.850 motion (Resp. Ex. L at 62-67). The trial court summarily denied the claim, finding the following in relevant part:

> The Defendant alleges that the Court committed error when it told the jury that the Court could not answer the jury's question, "Did Peggy Hagen see the assailant from only behind or from the side, too?" The Defendant argues that the question indicates that the jury was questioning the witness' ability to accurately identify the

> Defendant as the robber and that if they heard that the witness had only seen the robber[']s back they would have found the Defendant not guilty. Therefore, the Defendant's attorney was ineffective for failing to object to the Court telling the jury it could not answer its question and failing to request that the witness' testimony be played back for the jury.
>
> First, the jury asked a specific factual question, they did not request to re-hear the witness' testimony. Furthermore, the witness' testimony indicated that she was familiar with the robber because she had seen him in the store several times before. Peggy Hagen also testified that she had seen the robber's face when she watched the surveillance video. Ms. Hagen had seen more than just the back of the robber.
>
> The record reflects that the Defendant's attorney was not ineffective and that the Defendant was not prejudiced as alleged in Ground one.

*Id.* at 102-03 (record citations omitted). Petitioner appealed the trial court's denial of this claim (Resp. Ex. M at 3-5), and the Fifth DCA affirmed without a written opinion (Resp. Ex. O).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that the trial court adequately summarized the evidence adduced at trial. One of the victims, Peggy Hagen, testified that she was finishing up paperwork in the office of the Family Dollar when she heard her coworker Matthew Kervin screaming "no" (Resp. Ex. B at 39). Hagen testified that she opened the office door and "saw the assailant" walking out of the store as Kervin lay bleeding on the ground (*id.*). According to Hagen, she "recognized [Petitioner] from the back" (*id.* at 42). Indeed, Hagen testified that "[h]is walk was very distinctive," and she "knew by the height

8

and build of him exactly who it was," stating, "I'd seen this man daily" (*id.* at 42). The state then played the surveillance video showing the incident (*id.* at 43-46), during which Hagen is seen leaning out the front door to confirm Petitioner's identity before calling police (*id.* at 46-49).

Kervin also testified that Petitioner was a regular customer of the Family Dollar and he had seen Petitioner in the store a few days before the attempted robbery (Resp. Ex. B at 28). Kervin described the details of the incident, explaining that he saw Petitioner walk into the store whispering "the store is being robbed" (id. at 27). According to Kervin, because he recognized Petitioner, he did not really consider Petitioner's statements until Petitioner approached him and started hitting Kervin with a gun while demanding he open the cash register (*id.* at 27). During its deliberations, the jury asked, "Did Peggy Hagen see the assailant from only behind or from the side, too?" (*id.* at 135). In response, the trial court advised that the jury must rely on their own collective memories and allowed the jury to again review the surveillance video of the incident (*id.* at 135-38).

Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground One is denied.

### *B. Ground Two*

Petitioner alleges that trial counsel was ineffective for failing to adequately cross-examine Kervin about his inability to identify the firearm allegedly used during the incident (Doc. 1 at 8-9). Petitioner raised this claim in his initial Rule 3.850 motion (Resp. Ex. L 66-69). The trial court summarily denied the claim, finding the following:

> The Defendant alleges that his attorney did not go far enough in his cross examination of the victim concerning whether or not the object that the robber had in his hand was a firearm. However, in response to cross examination by the Defendant's trial attorney about the object in the robber's hand, the victim testified that he ". . . didn't see very good at all" and he did not ". . . know anything about guns . . . ." The Defendant argues that his trial attorney should have asked the victim: "So, in reality, Mr. Kervin, you really do not know whether it was a gun or not?" However, asking that question runs the risk of the victim answering that he was absolutely sure the object was a firearm. How the victim would have answered that question is mere speculation. The record reflects that the Defendant's trial attorney was not ineffective and that the Defendant was not prejudiced as alleged in ground two.

*Id.* at 103-02 (record citations omitted). Petitioner appealed the trial court's denial of this claim (Resp. Ex. M at 3-5), and the Fifth DCA affirmed without a written opinion (Resp. Ex. O).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that trial counsel conducted a thorough cross-examination of Kervin about his ability to identify the alleged firearm (Resp. Ex. B at 32). Trial counsel elicited testimony that Kervin did not notice the size of the alleged barrel of the gun, that

he did not "see very good at all," and that he did not see the front of the alleged firearm (*id.*). Trial counsel also elicited testimony that Kervin does not have a lot of experience with firearms, but that he merely knows firearms are metal (*id.*). Still, Kervin explained that knew what a firearm looked like and was adamant that Petitioner was in possession of a firearm during the attempted robbery (*id.* at 29-30). Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Two is denied.

### C. Ground Three

Petitioner asserts that his trial counsel was ineffective for failing to investigate potential alibi witnesses and ensure their availability at trial (Doc. 1 at 11). Petitioner raised this claim in his initial Rule 3.850 motion (Resp. Ex. L at 70-72). Following an evidentiary hearing, the trial court denied the claim:

> An evidentiary hearing was held on this ground. The Defendant alleges that he told his attorney that he was at his pastor's house on July 24, 2014 when the offenses with which he was charged were committed. The Defendant testified that he told his attorney that he had witnesses to establish his alibi but his attorney never contacted these witnesses. The Defendant's mother, fiancé, and pastor testified at the evidentiary hearing, however, during cross examination, Mr. Green, the Defendant's pastor, did not know what day of the week July 24, 2014 was. The Defendant's mother did not specifically recall July 24, 2014. The Defendant's fiancé testified that "[t]his family meal always happens on the weekend, Friday, Saturday, mostly Sunday." July 24, 2014 was a Thursday.

11

> The Defendant's trial attorney testified at the hearing that very close to the trial date, he vaguely recalled the Defendant telling him something about a dinner with his pastor and to contact his fiancé, however, the Defendant's attorney was not able to contact the Defendant's fiancé.
>
> During the Defendant's trial, the Defendant did not mention anything about an alibi or alibi witnesses when the Court asked him if he wanted to testify or when his attorney stated that the defense had no witnesses unless the Defendant wanted to testify. Neither the Defendant nor his fiancé mentioned anything about an alibi or alibi witness when the Defendant was sentenced on March 25, 2015.
>
> The Defendant has failed to prove that his trial attorney was ineffective as alleged in ground three.

Resp. Ex. L at 104-05 (record citations omitted). Petitioner appealed the trial court's denial of this claim (Resp. Ex. M at 3-5), and the Fifth DCA affirmed without a written opinion (Resp. Ex. O).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that the record supports the state court's adjudication of this claim. At the evidentiary hearing, all three of the alleged alibi witnesses testified in general terms that Petitioner was in another county for the entire month of July, helping with a church function (Resp. Ex. L at 277-93), but no witness could specifically remember the events of July 24, 2014. Petitioner's trial counsel also testified that about six days before trial, Petitioner told counsel that he was at a church dinner the night of the attempted robbery and asked trial counsel to contact his fiancé as a

potential alibi witness (*id.* at 294-98). Trial counsel explained that he tried to contact Petitioner's fiancé but was unable to find her (*id.* at 298). Trial counsel also stated that Petitioner's mother never contacted him before trial about a potential alibi and that Petitioner never provided trial counsel with any other names or contacts to investigate (*id.* at 295). Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts considering the evidence presented to the state court. Ground Three is denied.

### D. Ground Four

Petitioner argues that his trial counsel was ineffective for failing to object and move for a mistrial when witness Hagen testified that Petitioner was wearing a wig during the attempted robbery and that Petitioner had worn the same wig on previous visits to the store (Doc. 1 at 13-15). According to Petitioner, Hagen's statement amounted to impermissible hearsay that affected the jury's verdict (*id.* at 15).

Petitioner raised this claim in his initial Rule 3.850 motion (Resp. Ex. L at 73-75). The trial court summarily denied the claim, finding the following:

> The Defendant alleges that his attorney did not make a hearsay objection and move for a mistrial when a witness testified that, ". . . they're saying now it's a wig, but he had worn this previously in the store when he had come in on other occasions." The Defendant argues that the Court would have granted a motion for ". . . mistrial because the statement that the Defendant was wearing a wig went directly to the identification of the Defendant and

13

improperly clouded the jurors mind." The Defendant also argues that the witness could have been impeached by his attorney ". . . because during the trial the Defendant did not have any blond/tan coloring to his hair, and the Defendant was wearing the same dreadlock style hair."

Mr. Kervin, the clerk who was struck in the head, and the manager, Ms. Hagen, testified at trial that they were familiar with the assailant. Ms. Hagen testified that she had seen the assailant many times before the attempted robbery. Mr. Kervin testified that he had seen the assailant "[t]wo times before." Mr. Kervin also testified that the assailant's hair did not make a difference, he just remembered the face. Ms. Hagen testified that she had seen the assailant with and without ". . . that hair before" and the most distinctive features of the assailant were his facial markings. Hair color or style did not seem to be an issue in the witnesses['] identification of the assailant.

How the Court would have ruled on a motion for mistrial is speculation. "A mistrial should be declared only when the error is so prejudicial and fundamental that it denies the accused a fair trial." *Buenoano v. State*, 527 So.2d 194, 198 (Fla. 1988). Even if Ms. Hagen's statement was hearsay, it did not deny the Defendant a fair trial given the testimony of the eyewitnesses.

The record indicates that the Defendant's trial attorney was not ineffective and the Defendant was not prejudiced as alleged in ground four.

Resp. Ex. L at 105-06 (record citations omitted). Petitioner appealed the trial court's denial (Resp. Ex. M), and the Fifth DCA affirmed the order without a written opinion (Resp. Ex. O).[4]

---

[4] Respondents argue that Petitioner failed to exhaust the allegation in Ground Four because when he appealed the trial court's denial of his initial Rule 3.850, Petitioner only made a brief conclusory reference to this claim in his appellate brief (Resp. at 9). For purposes of this Order, the Court finds Petitioner's clear, but brief, reference to this claim in his appellate brief (Resp. Ex. M at 5) was enough to exhaust these allegations.

14

The Fifth DCA's adjudication of this claim is entitled to deference. In applying such deference, the Court finds that the state court adequately summarized the evidence presented at trial. Hagen and Kervin testified that Petitioner was a regular Family Dollar customer and that they both immediately recognized him when he entered the store (Resp. Ex. B at 28, 40) Hagen recognized Petitioner's tattoos and stated that on the night of the incident, Petitioner was wearing "a wig"; but explained that she had seen Petitioner wear the same wig on prior occasions and had also seen Petitioner in the store without the wig (*id.* at 42, 52). Hagen also testified that following the attempted robbery, police presented her with a photo lineup and she identified Petitioner even though in the photo Petitioner was donning his natural dreads/braids (*id.* at 52). Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts considering the evidence presented to the state court.

### E. Ground Five

Petitioner argues that his trial counsel was ineffective for affirmatively misadvising Petitioner to reject the state's ten-year plea offer (Doc. 1 at 17). According to Petitioner, soon after his arrest, the state offered him a ten-year negotiated disposition in exchange for Petitioner entering a guilty plea to pending charges in two cases (*id.*). Petitioner contends that trial counsel advised Petitioner that he should reject the offer because the state's evidence was weak and he would

prevail at trial (*id.*). He claims that but for counsel's misadvice, he would have accepted the plea offer. (*id.* at 19).

Petitioner raised this issue as his sole claim in his second or successive Rule 3.850 motion (Resp. Ex. Q). The trial court dismissed the second Rule 3.850 motion, finding the following in relevant part:

> The Defendant has now filed a second or successive motion for post conviction relief alleging that the Defendant's trial counsel was ineffective for advising "… the Defendant to reject the State's plea offer of ten years."
>
> The Defendant failed to raise this alleged issue in his previous motion for post conviction relief or at the evidentiary hearing on ground 3 of that previous motion. There is no good cause for failing to raise this ground in the previous motion.

(Resp. Ex. R). Petitioner appealed the trial court's dismissal, and the Fifth DCA per curiam affirmed without a written opinion (Resp. Ex. T).

Respondents argue that this claim is procedurally barred from the Court's consideration because the state court dismissed the claim on an adequate and independent state procedural ground (Resp. at 10). This Court agrees. *See Owen v. State*, 854 So.2d 182, 187 (Fla. 2003) ("A second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion . . . . [C]laims that could have been raised in a prior postconviction motion are procedurally barred."). Further, the Eleventh Circuit has recognized Florida's procedural rule prohibiting second or successive postconviction motions as an independent and adequate state procedural bar. *See Jennings v. McDonough*, 490 F.3d 1230, 1247-48

16

(11th Cir. 2007) (holding that a state court's determination that the petitioner's claims were procedurally barred by Florida's rule against successive postconviction motions was a state law ground independent of the federal question and adequate to support that state court's judgment, thereby rendering the claims procedurally defaulted on federal habeas review). And there is no evidence that the state courts applied its procedural rule in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). Thus, this claim is procedurally barred from federal habeas consideration. Petitioner does not try to argue cause for or prejudice from this procedural default, nor does he claim that failure to consider the merits of this claim will lead to a fundamental miscarriage of justice. Thus, Ground Five is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

**DONE AND ORDERED** at Tampa, Florida, this 27th day of August, 2021.

*[signature]*

TOM BARBER
UNITED STATES DISTRICT JUDGE

Jax-7

C:  Stedman T. Smith, #T58978
    Counsel of record

---

[5] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.